UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 17 CR 518 |
| ) | |
| HEATHER MACK, ) | Judge Kennelly |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO MACK'S
MOTION TO SET/REDUCE MONTHLY RESTITUTION AMOUNT**

**Introduction**

Defendant Heather Mack moves this court for an order setting a maximum monthly payment that the United States may collect while she is incarcerated. Mack cites no statutory law or case law in her motion. She appears to be attempting to use a payment schedule to prevent the United States or the Bureau of Prisons from enforcing her restitution debt through normal, statutory mechanisms. However, the Seventh Circuit has held that a district court should not specify a payment schedule during the term of incarceration and that the BOP is statutorily entitled to enforce the judgment. *United States v. Sawyer*, 521 F.3d 792 (7th Cir. 2008). Regardless, a payment schedule is a "floor, not a ceiling" on her restitution enforcement. *United States v. Fariduddin*, 469 F.3d 1111, 1113 (7th Cir. 2006). The BOP is tasked with enforcing her restitution order against her prison wages and inmate trust account through the Inmate Financial Responsibility Program while she is incarcerated. The BOP is statutorily tasked with determining an appropriate amount of payment from those sources, if any, and *Sawyer* held that the court should not interfere with that process. For those reasons, Mack's motion should be denied.

**Background**

Defendant Heather Mack conspired to murder her mother and pleaded guilty to conspiracy to commit foreign murder of a United States national, a violation of 18 U.S.C. §1117. The court sentenced her to 26 years imprisonment and to pay $262,708 in criminal restitution to her mother's estate and to pay a $50,000 fine. The beneficiaries of her mothers' estate, who receive the restitution funds, are raising the defendant's daughter because Mack is incarcerated. Mack's judgment specifies that a lump sum payment of $312,808 is due immediately. The judgment further states that "payment of criminal monetary penalties" is due during imprisonment. Dkt. 131, Judgment at 6. The judgment further contemplates payments through the Bureau of Prisons' Inmate Financial Responsibility Program. *Id*. Mack now asks the court to set a schedule of payments while she is incarcerated, apparently believing that such a schedule would prevent the United States' enforcement of the judgement and avoid her participation in the Inmate Financial Responsibility Program (which is voluntary anyway).

Mack agreed to an Inmate Financial Responsibility Program plan that required a monthly of $440. The BOP determines the amount of the monthly payment through a formula relying on the total deposits into the defendant's inmate trust account over the previous six months. The monthly payment may fluctuate if deposits increase or decrease. During the course of her incarceration, Mack's monthly deposits have decreased and thus, so has her obligation under the IFRP.

**Argument**

A.  **Payment Schedule**

The court should decline Mack's invitation to limit collection of her restitution judgment by imposing what she apparently believes will be a maximum amount that can be collected while

2

in prison. The Seventh Circuit has expressly rejected any requirement for a payment schedule during incarceration because it would be an unnecessary and confusing interference in the enforcement of the debt and may result in delays in restitution to victims. *United States v. Sawyer*, 521 F.3d 792, 793 (7th Cir. 2008). *Sawyer* is an aggregation of three criminal appeals where the sole argument in each case was that the district court committed plain error by not specifying an installment plan for the payment of restitution during the term of incarceration. *Id*. at 793. The judgments in each case indicated the total restitution each defendant owed but did not set a payment schedule. *Id*. *Sawyer* thoughtfully considered the issue and firmly held that a J&C setting the restitution amount without a minimum payment schedule does *not* constitute plain error and does not need to be corrected. *Id*. at 798-99. It reasoned that the United States may enforce its judgments against the defendant's assets as it would a civil judgment, although for convenience purposes, it is done within the criminal case. *Id*. at 796-97. In civil cases, judgment creditors may use statutory legal remedies to enforce the judgment, and the same is done here.

  The court entered a restitution judgment against defendant Mack in the amount $262,708. Dkt. 131 at 6. Under 18 U.S.C. §3613(c), the order of restitution created a "lien in favor of the United States on all property and rights to property." *Stacy v. United States*, 70 F.4th 369, 377 (7th Cir. 2023); *United States v. O'Brien*, 2024 WL 4371625, at *2 (7th Cir. Oct. 2, 2024). The United States may enforce the judgment through the court's payment order, the statutory restitution lien against nonexempt assets, and through all other available means. 18 U.S.C. §3664(m)(1)(A). One of those "other available means" is the Inmate Financial Responsibility Program. The J&C lacking the *additional remedy* of the payment schedule during the term of incarceration does not jeopardize the defendant's rights. *Sawyer*, 521 F.3d at 797. That payment schedule would be a "floor, not a ceiling" on restitution enforcement anyway. *United States v. Fariduddin*, 469 F.3d

3

1111, 1113 (7th Cir. 2006). *Sawyer* further reasoned that a schedule is superfluous in most situations and has no real meaning because fulfilling the payment schedule would rarely satisfy the restitution judgment during the 20 years of statutory enforcement. *Id*. at 797-98. Setting a payment schedule would not impact the United States' other statutory remedies.

### B. Inmate Financial Responsibility Program

The payment schedule that Mack seeks could be argued to restrict administration of the Bureau of Prisons Inmate Financial Responsibility Program. Payment of criminal monetary penalties is partially within the purview of the BOP while a defendant is incarcerated. The BOP is charged with assisting inmates to meet their financial obligations, and the Inmate Financial Responsibility Program ("IFRP") is one means to accomplish that goal. *See* 28 C.F.R. § 545.10.[1] Under BOP regulations, the IFRP is a voluntary program. *See* 28 U.S.C. § 545.11. Mack asks this court to amend the original judgment by setting a payment schedule for the entire term of her incarceration, which she presumes would limit the United States' enforcement of her debt and the BOP's use of the IFRP. This court should not amend the judgment to grant the defendant this benefit and thereby interfere with BOP's voluntary program.

The IFRP is an entirely voluntary program and Mack has the choice to refuse to participate in the IFRP. *United States v. Boyd*, 608 F.3d 331, 335 (2010). However, negative consequences may flow from that choice. *See* 28 C.F.R. § 545.11(d) (listing 10 negative consequences to an inmate that may follow from an inmate's failure to participate in the IFRP, including, but not

---

[1] In relevant part, 28 C.F.R. § 545.10 provides: "The Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations. As part of the initial classification process, staff will assist the inmate in developing a financial plan for meeting those obligations, and at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility."

4

limited to, the inability to receive a work assignment outside of the facility, being disallowed from participation in UNICOR, commissary spending limitations, being quartered in the lowest housing status, and not receiving an incentive for participation in residential drug treatment programs). Placement into the BOP's special housing unit is *not* a consequence of failing to participate or to meet the IFRP's requirements.[2] Mack seeks to limit the U.S.'s enforcement of the debt while simultaneously eluding the negative consequences of refusing to participate in the IFRP. If this court limits Mack's obligation to her criminal monetary penalties through some special maximum payment schedule, it would bestow upon Mack a benefit unavailable to other inmates and create an incentive for other inmates to pursue similar relief, thereby undermining BOP's effort to operate the IFRP as an effective means of encouraging inmate responsibility and discipline. Such a result is not in the interests of justice.

    Finally, BOP alone administers the IFRP and is charged with promulgating the minimum requirements for inmate participation. *See* 28 C.F.R. §§ 545.10 and 545.11 (listing statutory authority for the IFRP program); 28 U.S.C. § 4042(a)(3) ("The Bureau of Prisons, under the direction of the Attorney General, shall . . . provide for the protection, instruction, and discipline of all persons . . . convicted of offenses against the United States."). This court is not statutorily authorized (by 18 U.S.C. §3572 or otherwise) to order BOP to compromise those requirements for the benefit of a particular inmate. In *Sawyer*, the Seventh Circuit explained that how much of the money that inmates make during their captivity must be paid to creditors is a subject "well within

---

    [2] After the filing of the motion, the parties met and conferred telephonically. It appears that defense counsel was under the mistaken impression that Mack was actually put in the "hole" or Special Housing Unit. However, it appears that it was only Mack's (mis)understanding that she would be put in the SHU if she did not make monthly payments. However, that does not appear to be the actual consequence in the event Mack does not make her monthly payments. Defense counsel is in the process of attempting to obtain another legal call with Mack in advance of the hearing.

5

the authority of the Executive Branch," adding that courts "are not authorized to override the Bureau's discretion about such matters, any more than a judge could dictate particulars about a prisoner' meal schedule or recreation (all constitutional problems to the side)." *Sawyer*, 521 F.3d at 794 (noting also that inmates dissatisfied with BOP's operation of the IFRP may be able to pursue administrative relief or seek review under the Administrative Procedure Act, 5 U.S.C. § 702). As a result, district courts should not set payment schedules for defendants during the period of their incarceration. *See Sawyer*, 521 F.3d at 796.

## Conclusion

For the foregoing reasons, the court should deny defendant Mack's motion to set a payment schedule.

MORRIS PASQUAL,
Acting United States Attorney

By: s/ Scott D. Heffron
SCOTT D. HEFFRON
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-4190
scott.heffron@usdoj.gov